## No. 12,340.

REICHELT ET AL. *v.* TOWN OF JULESBURG.
(8 P. [2d] 708)

Decided February 8, 1932.

Mr. T. E. MUNSON, for plaintiffs in error.

Mr. G. E. HENDRICKS, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE ADAMS delivered the opinion of the court.

REICHELT and others joined in a petition to the county court of Sedgwick county to have their lands disconnected from the incorporated town of Julesburg. Upon trial to the court the petition was denied and the cause dismissed. Petitioners bring error.

The petitioners, now plaintiffs in error, are Hulbert Reichelt, Ben Franklin, L. W. Eversman, R. L. Franklin and J. N. French. The accompanying plat shows the town and the location of their several tracts of land.

PLAT OF TOWN OF JULESBURG

As indicated on the plat, the tracts are contiguous and contain an aggregate of approximately 323 acres of land.

The solid heavy lines show the present outer boundaries of the town, if the maps in evidence are correct.

Petitioners claim under the provisions of chapter 170, pages 508-511, Session Laws 1925, entitled, "An Act Relating to the Disconnection of Territory from Incorporated Towns." The parts of the act that are applicable to the present case read as follows:

"Section 1. That whenever a tract or two or more contiguous tracts of agricultural or farm land, aggregating twenty or more acres in area, are embraced within the corporate limits of any incorporated town, the outer boundary of which acreage is adjacent to or upon the border of said town, the owner or owners of said tract or tracts of land may petition the county court of the county in which such land is situated to have the same disconnected from said incorporated town; Provided, intersecting highways or intervening railroads shall not render said tracts of land noncontiguous or nonadjacent.

"Section 2. Said petition shall show to the court:

(1) That such tract or tracts of land contain in the aggregate an area of twenty or more acres of agricultural or farm land upon or adjacent to the border of said town. (2) That petitioners are the owners thereof. (3) The description of the land. (4) That no part of such area has been platted into lots or blocks as a part of or an addition to said town. (5) That all taxes or assessments lawfully due and payable upon said land up to the time of the presentation of said petition are fully paid.

"Section 3. That, upon the filing of such petition in the county court, the judge shall set a time for hearing, * * * and, upon the hearing and proof of the facts set forth in such petition, it shall be determined whether such tract or tracts of land should be disconnected from said town, and the judge shall enter an order or decree accordingly; Provided that, whenever an incorporated town has improved any of the highways passing through or adjoining said tract or tracts of land, by the construction

and maintenance by said town of any special improvements along, under or over the same, for a period of more than two years prior to the presentation of the petition, the petitioners shall not be entitled to the provisions of this Act.''

The respondent town argues that the judgment should be affirmed for the following alleged reasons: (1) The Eversman lands are not shown to be agricultural or farm lands; (2) the acreage sought to be disconnected is not upon the outer boundary of the town; (3) the town has constructed and maintained special improvements, within the time and as defined in section 3 of the above act; (4) the above statute is unconstitutional; (We shall consider the above points in the order named.) (5) the total acreage must be considered as a unit, and if one petitioner fails to satisfy the statute, they all fail.

1. Petitioners' proof that the Eversman real estate was agricultural or farm land was not as definite as it might have been, but the omission was cured by testimony elicited from Wagner and Deich, witnesses for the town. They referred to the lands of Eversman and others as farm lands. The objection that the proof failed in this respect is without merit.

2. The objection that the outer boundary of the acreage to be disconnected is not adjacent to or upon the border of the town is contrary to the facts, as the above plat will show. The statute does not require that each separate tract should be upon or contiguous to the border. If contiguous to each other, the fact that one of them is upon the border brings the case within the statute. *Town of Gypsum v. Lundgren,* 61 Colo. 332, 157 Pac. 195. Counsel for the town further points out that the proposed disconnection would leave a strip of land not belonging to petitioners within the town limits, and argues that this would destroy the symmetry of the town. Counsel has reference to the Carroll and Schroeder lands and other lands south of the Lincoln highway, which highway is adjacent to the Reichelt and Ben Franklin lands.

*Anaconda Mining Co. v. Town of Anaconda,* 33 Colo. 70, 73, 80 Pac. 144, is cited, but the plat illustrating that case compared with the one here shows that the Anaconda case is not in point. The rule is not one of symmetry, but of contiguity. In that case, the mining company sought to bisect a large part of the town by disconnecting its claims, connected with the border only by a narrow strip, but we held that the lands were not contiguous to the border within the meaning of the statute. No such condition prevails here; furthermore, as long as the petitioners are within the statutory requirements, their rights are not defeated by any situation with respect to the lands of third parties, that is Carroll and Schroeder.

 3. Special improvements. The trial court denied the petition and dismissed it upon the grounds contained in section 3 of the 1925 act. It found that the town had improved the highways passing through and adjoining petitioners' tracts of land, by the construction and maintenance by the town of special improvements along, over and under the same for a period of more than two years prior to the presentation of the petition. The court found this to be particularly true as to the highways adjoining the tracts of land owned by Ben Franklin and J. N. French. Petitioners allege error on the ground that such findings are not supported by the evidence. These findings relate to defensive matter, contained in section 3 of the 1925 act. The burden of proof as to such matter rests upon the town, since all that the petitioners were required to show were the affirmative matters set forth in section 2, which they did. We shall now consider the evidence in defense of the petition.

 4. The following additional special findings throw light upon the weight given by the county court to certain evidence, and indicate how it reached the above conclusions. The findings continue as follows: "That for more than said period of two years the defendant [town] has constructed and maintained transmission lines for carrying electric current along and over said highways,

and has constructed and maintained underground water mains for carrying water under said highways, and that the premises, improvements and dwelling houses of the said plaintiffs, Ben Franklin and J. N. French, have been for a period of ten years or longer supplied with electric current from said transmission lines, and water from said water mains, all of which have been, and now are of special benefit thereto, and have materially increased the value thereof.''

While we do not believe that the trial court intentionally ignored the law of 1925, the special findings last above quoted lead us to fear that the court actually followed portions of a former statute that has no present application. We refer to the concluding part of section 3, chapter 52, pages 154, 155, S. L. 1913, section 9240, C. L. 1921, which reads: ''Provided, that whenever a city or town has maintained streets, lights and other public utilities for the period of three years through or adjoining to said tract or tracts of land the owners shall not be entitled to the provisions of this act.'' The act of 1925 superseded the act of 1913 in its application to incorporated towns. *Burton v. Town of Sheridan,* 80 Colo. 361, 251 Pac. 725.

5. Previous decisions of this court, based upon the 1913 act, gave full recognition to the provision quoted. Among these cases are, *Town of Englewood v. Jones,* 71 Colo. 181, 204 Pac. 607; *Morrison v. Town of Lafayette,* 67 Colo. 220, 184 Pac. 301; *Adams v. Town of Gunnison,* 62 Colo. 114, 160 Pac. 1033. See also *Town of Kersey v. Ewing,* 59 Colo. 239, 149 Pac. 619, construing S. L. 1901, chapter 106, pages 386, 387, sections 6733-7, R. S. 1908. Since the above cases were decided, the General Assembly appears to have recognized the severity of the former laws, under which farmers were compelled to allow large bodies of their unplatted agricultural or farm lands, unsuited to urban life, to remain within town limits against the will of their owners. As a result, the 1925 act was passed, which liberalized the conditions of release from

such burdens, by placing a further limitation upon the defenses of towns in proceedings to disconnect outlying territory. *Burton v. Town of Sheridan, supra* (noted in 62 A. L. R. 1036) is the only case before this one where the 1925 act was involved, and we there pointed out some of the distinctions between the statutes of 1913 and 1925. The instant case requires the notation of other differences.

Section 3 of the 1925 act contains the word "improvements," not contained in the former law as to towns. The 1925 act limits these improvements to *highways;* it restricts them to *special* improvements on the highway "along, under or over the *same,*" etc. It uses the words "*constructed* and maintained," conjointly, as against the word "maintained," in the 1913 act. (The italics are ours.) These new limitations are not ours; they are the words of the General Assembly, and we merely give their expressions their natural meaning. If they seem to enhance the difficulty of the town in making a defense under section 3, we must presume that the legislature intended to impose such additional restraints for the reasons that we have stated. From aught that appears here, the law-making body might repeal the whole section if it deemed it to be expedient.

6. We refer again to *Burton v. Town of Sheridan, supra,* for an interpretation of the term "special improvements," as applied to the act, limited, of course, to highways. We have examined the entire record, but notwithstanding the findings, we are unable to discover anything to warrant the conclusions of the trial court, or to sustain the judgment of dismissal. On the whole, the work on the highways consisted of their general upkeep, incident to any highway, and necessary to the safety and convenience of the traveling public. They were not of the character defined in section 3 of the act. A transmission line for the carriage of electrical power, not for lighting the highway, might impose a servitude on the highway without improving or benefitting it. The evi-

dence shows that there was a street light in the platted portion of the town, east of French's land, but it was for the benefit of all who passed that way, and as to all electrical current, the town sold it as far east as the state of Nebraska, apparently without discrimination except as to price. There were community advantages, reciprocal in their nature, beneficial to merchants and other town residents as well as to rural inhabitants, which in the nature of things will ever remain whether the land is disconnected or not. Evidence introduced by the town as to the enhancement of land values, because of such matters in general, seems to have been given weight, when it was entitled to none. If the mere enjoyment of certain natural advantages, common to all, by reason of close proximity to the town constituted a defense, no territory could ever be disconnected.

7. Counsel for the town contends that the controversy is beyond the jurisdiction of the county court for the reason that the value of the lands sought to be detached exceeds the sum of $2,000. His theory is that the court cannot go beyond that limitation under section 23, article 6 of the Constitution of this state, which reads in part as follows: "County courts shall be courts of record and shall have original jurisdiction in * * * and such other civil and criminal jurisdicton as may be conferred by law: Provided, Such courts shall not have jurisdiction in any case where the debt, damage, or claim or value of property involved shall exceed two thousand dollars, except in cases relating to the estates of deceased persons."

The attorney for the town is content with a mere statement of his legal proposition and offers no argument to support it. There is nothing to be said in its favor, and much against it. The principle involved is the same as in *Phillips v. Corbin,* 25 Colo. 62, 66, 49 Pac. 279; *Martin v. Simpkins,* 20 Colo. 438, 445, 38 Pac. 1092, and *Town of Fletcher v. Smith,* 18 Colo. App. 201, 202, 70 Pac. 697. The two first cases here cited relate to the jurisdiction of the county court under an act providing for the annexa-

tion of contiguous towns and cities, and the Town of
Fletcher case pertains to the jurisdiction of that court
under an act providing for the disconnection of outlying
territory from towns and cities. These cases all hold
that such actions are special statutory proceedings, as
distinguished from an ordinary action at law, or suit in
equity. The language used there is directly applicable
here. The present action comes within the class of cases
justified by that part of section 23, article 6, of the Consti-
tution which authorizes the general assembly to confer
other jurisdiction on the county courts, not hostile to the
Constitution. The present proceeding has nothing to
do with title to lands and is not dependent upon their
value.

█ 8. The fallacy of the position of the town is
emphasized by the fact that it unconsciously discredits
its own corporate entity, and impliedly denies its right
to claim that *any* lands are contained within its municipal
borders under its organization, if value is a criterion.
The town of Julesburg was organized under a statute
which calls for proceedings in the same court the juris-
diction of which is now questioned by the town. See
section 8979, C. L. 1921; et seq. Such proceedings re-
quire a determination by that court adjudging the incor-
poration to be complete. Section 8981, C. L. 1921. The
power to detach territory from the town is analogous to
and in the same class with the power to attach. 43 C. J.
page 119 [§77] (4). If the court did not have power to
do the one, it did not have power to do the other, but we
are convinced that it had power to do either or both upon
compliance with the conditions prescribed by law. The
jurisdiction of county courts in this respect has had legis-
lative and judicial recognition in this state since the be-
ginning of our statehood.

█ 9. The town makes a further objection that
the proceeding for disconnection of territory is "special
or class legislation," in violation of section 25, article 5,
Colorado Constitution. The argument is ingenious but

unconvincing; it is not supported by any valid reason or authority in point, and we will not search for constitutional defects. As said in *Mayor v. Shattuck,* 19 Colo. 104, 110, 34 Pac. 947, "In general, the legislature has plenary power in respect to municipal corporations." and "The courts will not declare a legislative act unconstitutional unless its unconstitutionality is clearly and palpably apparent."

10. The findings indicate that the court believed that the town made its strongest case against Ben Franklin and J. N. French with respect to their lands. It is intimated in petitioner's brief that the court would no doubt have granted the petition concerning the lands of the three other petitioners, but that the court was convinced that the joint petition should stand or fall as a whole. The statute permitting a joint petition prevents a multiplicity of suits, and the causes were not necessarily interdependent. To dismiss as to one entitled to relief would merely relegate him to another suit with the same result with useless additional expense, but in this case they were all entitled to the relief for which they prayed.

11. When the facts required by the statute to be established have been proven, it becomes the duty of the court to enter a decree disconnecting the territory. *Town of Edgewater v. Liebhardt,* 32 Colo. 307, 309, 310, 76 Pac. 366; *Anaconda Mining Co. v. Town of Anaconda, supra; Hendricks v. Town of Julesburg,* 55 Colo. 59, 65, 132 Pac. 61.

We have considered questions of estoppel and all other objections of the town, ably argued by its attorney, but find them untenable. The judgment is therefore reversed and the cause remanded, with instructions to enter a decree disconnecting the petitioners' lands from the town of Julesburg.

MR. JUSTICE HILLIARD dissents.